The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Michael J. LYONS, Defendant–Appellant.

No. 93CA1096.

Colorado Court of Appeals, Div. II.

Aug. 10, 1995.

Rehearing Denied Sept. 7, 1995.

 

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John D. Seidel, Assistant Attorney General, Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Thomas K. Carberry, Deputy State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Michael Lyons, appeals from the judgment entered on a jury verdict convicting him of sexual assault on a child while in a position of trust, a class three felony. Because we conclude that defendant's Sixth Amendment right to confront a significant witness was violated, we reverse his conviction and remand for a new trial.

The alleged victim in the case was the defendant's four-year-old daughter, who resided with her mother. The assault allegedly occurred during an overnight visitation with defendant which took place at the home of defendant's parents, the victim's grandparents.

Defendant, his mother, and his father all testified to the following version of the events of that visitation:

While defendant, his parents, and the child were driving to the parents' home on the morning of the visitation, the child complained of pain in her vaginal region; she repeated this complaint after lunch.

The grandfather then undressed the child and examined her; he discovered that her persistent vaginal rash had become quite severe. He first bathed the child and then, being unable to locate the antibiotic cream with which they ordinarily treated this rash, he applied petroleum jelly to the rash.

After dinner, the child and defendant played "horsey" and "airplane," which are physical pastimes that can entail abrasion of the vaginal region. After a long period of such play, the child again complained of vaginal pain, and the grandmother bathed her

and applied more petroleum jelly. The remainder of the visit was without incident.

The People based their case upon the following:

The mother reported that, a week after this visit, the child complained that her vagina hurt and that this was because defendant had been rubbing it. The next day the mother took the child to see her regular physician. The child told this physician that defendant had rubbed her vagina and would not stop until she cried. The physician then notified the police.

A week later, the child was interviewed by a social worker and a police officer, to whom she repeated this story; however, she also said that this had occurred at defendant's house, rather than at the grandparents' house. She also said that she had been wearing a nightgown which, according to defendant's witnesses, she had long since outgrown.

## I.

In their rebuttal case, the People were allowed to introduce portions of a reporter's transcript of testimony by the child's physician. That testimony had been given in a pre-trial hearing conducted pursuant to § 13–25–129(1), C.R.S. (1987 Repl.Vol. 6A), to determine whether the statements that the child had made to the physician were reliable and corroborated. The physician testified both to the content of such statements and to the results of the physical examination of the child that she had conducted. Essentially, it was her testimony that this examination revealed a redness and the presence of abrasions in the child's vaginal area that could have been caused only by trauma occurring within 10 days of the examination.

The People had mailed a subpoena to the physician for the trial; however, the transcript was allowed to be introduced because the trial court determined that the witness was "not medically available." That ruling arose in the following circumstances.

Immediately before the trial commenced on February 3, 1993, the prosecution informed the court that the physician witness had been pregnant and had delivered on January 24—some 10 days previously. The prosecution asserted that, although it had been aware for some time that the physician was pregnant, it had learned only the day before that she had already delivered. Later, before it rested its case-in-chief, the prosecution informed the court and counsel that it had decided not to present any testimony from this witness.

However, after defendant had presented his evidence, the prosecution offered the transcript of the physician's testimony at the pre-trial hearing, claiming that the physician was unavailable. In support of this claim, the prosecution tendered a one-sentence note from the prospective witness' attending physician, which said that the physician witness was in her "immediate post-partum period and is not physically or emotionally capable of testifying." Based solely upon this note, the court made a preliminary finding that the witness was unavailable. However, upon request by the defense, the author of the note was contacted by telephone and was questioned with respect to the conclusion stated in the note.

During this telephone conference, this physician made clear that his patient, the prospective witness, was physically capable of testifying, that she would suffer no physical or mental injury by testifying, and that she had no "intellectual deficit." Likewise, this physician stated that the witness would have no trouble in recalling events or in objectively stating her recollection. Rather, he stated that the only concern was that she "may get tearful in speaking about things that most of us would not find emotionally disturbing to us.... *That's all we are talking about.*" (emphasis supplied)

This physician also gave assurances that the condition from which the prospective witness was suffering was only temporary and "usually clears up after a time." However, neither of the parties nor the court inquired as to when such might reasonably be expected to occur. Nor did anyone initiate any contact with the prospective witness, by telephone or otherwise, in order to obtain from her a description of her condition.

The defendant contends that, given the information provided to the trial court, the introduction of the transcript of the witness' previous testimony violated his right to confrontation guaranteed by the Sixth Amendment. He raises a number of bases for this contention; however, since we agree with defendant that the unavailability of the witness was not demonstrated, we need not pass upon his other assertions.

■ The purpose of the Sixth Amendment's requirement of confrontation is to allow a defendant to cross-examine the witnesses against him or her. And, this right of cross-examination is designed not only to test the witness' recollection and credibility, but also to compel the witness "to stand face to face with the jury in order that they may look at him...." *Mattox v. United States*, 156 U.S. 237, 242, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895).

■ This right must, of course, yield to the rule of necessity, but the Sixth Amendment requires the People either to produce the witness or to demonstrate that a good faith effort to produce the witness has proved unavailing.

CRE 804(a) and (b)(1) authorize the receipt of testimony given by a witness at another hearing under certain circumstances, provided it is demonstrated that the witness is unavailable. Such unavailability may result from a "then existing physical or mental illness or infirmity." This rule is applicable both to civil and criminal cases, but there may exist a need to apply it less flexibly in criminal cases, which implicate Sixth Amendment rights, than in civil cases. *See Burns v. Clusen*, 798 F.2d 931 (7th Cir.1986) (Cudahy, J., concurring).

■ Nevertheless, there is no question but that the existence of a physical or mental illness or infirmity may render a witness unavailable, even in criminal cases. *See California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

■ However, not every physical or mental infirmity renders the witness unavailable. A witness is unavailable in the constitutional sense only if the disability involved is of such a nature that requiring the witness to testify would result in further physical or mental injury to the witness and is of such permanency that the witness would continue to be unavailable even if a reasonable continuance of the trial were to be granted. *See Peterson v. United States*, 344 F.2d 419 (5th Cir.1965) (witness temporarily unavailable because of pregnancy is not unavailable so as to authorize receipt of former testimony; in such circumstances, prosecution must seek continuance of trial). *See also United States v. Amaya*, 533 F.2d 188 (5th Cir.1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977).

■ Hence, if it appears that the witness' disability is only temporary, the trial court must consider, and make findings upon, the relevant circumstances, including the importance of the witness' testimony, the nature of the disability, the expected time of recovery, and any special circumstances that might dictate against any delay. *United States v. Faison*, 679 F.2d 292 (3rd Cir.1982).

■ Here, however, the information before the trial court did not establish that the witness was suffering from a condition that rendered her even temporarily unavailable. On the contrary, that information was that the prospective witness was capable, both physically and mentally, of testifying. We do not mean to suggest that, based on the information received by it, the court would have abused its discretion had it granted a continuance in the trial so as to permit the witness to testify at a later date. *See Gonsoir v. People*, 793 P.2d 1165 (Colo.1990). We determine only that, based on the showing made by the People here, the witness could not be considered to be unavailable for Sixth Amendment purposes.

■ Further, to hold that the error in receiving this witness' former testimony was not prejudicial, we must be convinced beyond a reasonable doubt that its receipt was harmless. *See Vega v. People*, 893 P.2d 107 (Colo. 1995); *Merritt v. People*, 842 P.2d 162 (Colo. 1992). Given the other evidence in this case and the nature of this witness' prior testimony, we are not so convinced.

## II.

Because the issue may arise on retrial, we also address defendant's contention that the trial court erred in excluding polygraph evidence offered by him. We conclude that the court committed no error in this respect.

The trial court granted the People's motion in limine to exclude defendant's proffered testimony from a polygraph examiner. In doing so, the court relied on *People v. Anderson,* 637 P.2d 354 (Colo.1981), which held that polygraph evidence is *per se* inadmissible. The decision in *Anderson* was based, in part, upon the test for the receipt of scientific evidence adopted in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923).

Defendant contends that the *Anderson* rule must now be reexamined in the light of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which held that the admissibility of novel scientific evidence should be determined by application of Fed.R.Evid. 702 rather than under *Frye.* We disagree.

■ *Daubert* concerned only the interpretation of the federal rules of evidence and was not decided on constitutional grounds. Hence, it is not binding on Colorado courts. *Lindsey v. People,* 892 P.2d 281 (Colo.1995). And, in cases decided after *Anderson,* the Colorado Supreme Court has continued to repeat that, while CRE 702 applies to certain types of novel scientific evidence, the *Frye* test still applies to polygraph evidence. *See Fishback v. People,* 851 P.2d 884 (Colo.1993); *Campbell v. People,* 814 P.2d 1 (Colo.1991); *People v. Hampton,* 746 P.2d 947 (Colo.1987).

■ . Defendant contends, in the alternative, that this evidence was admissible under the exception provided by CRE 801(d)(1)(B) for prior consistent statements by a witness. However, even if we assume, without deciding, that this exception provided a basis for admitting defendant's statements to the polygraph examiner, it provides no basis for admitting the examiner's opinions concerning the truthfulness of such statements.

The judgment is reversed, and the cause is remanded for a new trial.

JONES and CASEBOLT, JJ., concur.