

James B. Krasnoo, Andover, MA, for David Jesionowski.

John F. Farraher, Grady and Dwyer, Boston, MA, David C. Jenkins, Dwyer & Jenkins, Boston, MA, for William J. Beck, Denis J. Pierce, Thomas J. Burke.

Robert J. O'Sullivan, Office of the City Attorney, Lawrence, MA, for City of Lawrence.

David JESIONOWSKI, Plaintiff,

v.

William J. BECK, etc., Denis J. Pierce, etc., Thomas J. Burke, etc., Defendants.

Civil Action No. 94–10434–MLW.

United States District Court, D. Massachusetts.

March 6, 1997.

*MEMORANDUM AND ORDER ON MOTION OF THE DEFENDANTS, THOMAS BURKE ET AL TO STRIKE LATE DESIGNATION OF EXPERT (# 55) AND FURTHER MOTIONS OF DEFENDANTS DENIS PIERCE, THOMAS BURKE AND WILLIAM BECK IN LIMINE TO EXCLUDE EVIDENCE OF THE EXPERT JAMES A. JOHNSON (# # 81 AND 88)*

COLLINGS, United States Magistrate Judge.

In this case, the plaintiff brings claims of excessive force against several police officers of the City of Lawrence, Massachusetts.  In summary form, plaintiff alleges that when he was arrested and lying on the ground, face down, being handcuffed by one officer, another officer purposefully kicked him in the forehead causing serious injury.  The officers deny the kicking.

---

At trial, the plaintiff seeks to call James A. Johnson, an experienced polygraph examiner, to testify as to the results of a polygraph examination he performed on the plaintiff which revealed to the examiner that the plaintiff is telling the truth as to having been kicked in the head by a police officer.

The Court heard Mr. Johnson's testimony out of the presence of the jury on February 27 and 28, 1997. The defendants offered no evidence on the point, being content to cross-examine Mr. Johnson.

I accept the proposition that the standards by which to determine whether the results of polygraph examinations are admissible have changed since the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See United States v. Posado*, 57 F.3d 428, 429 (5 Cir., 1995); *Cf. United States v. Kwong*, 69 F.3d 663, 668 (2 Cir., 1995).

However, under the *Daubert* case, the proponent of the evidence has the burden of demonstrating that the expert is going to testify to "scientific knowledge." *Daubert*, 509 U.S. at 590, 113 S.Ct. at 2795. Although I find that Dr. Johnson is a qualified polygraph *examiner*, I do not find that he is competent to testify to the scientific theory underlying the polygraph test, or, put another way, "the scientific validity of the polygraph technique." *United States v. Galbreth*, 908 F.Supp. 877, 882 (D.N.M., 1995). Or, to paraphrase another case, I find that Dr. Johnson, ". . . although able to discuss the reliability of polygraph examinations in general terms, was unable to articulate with sufficient precision the reasons for its reliability . . .". *Miller v. Heaven*, 922 F.Supp. 495, 502 (D.Kan., 1996). As one commentator stated:

> An assessment of the validity of the theory underlying polygraphy and the acceptance of that theory in the relevant

community raises two preliminary questions: What is the underlying theory, and what is the relevant community? The second question appears readily answerable. To evaluate the theoretical basis for polygraphy, only scientists versed in physiology and psychology are capable of forming a competent opinion.

\*   \*   \*   \*   \*   \*

The premise of the relevant community concept is that members of that community are capable of critically appraising a proposed theory because they understand the more fundamental scientific or technical concepts that support the proposed theory. Only scientists specializing in physiological psychology have the capabilities required.

McCall, *"Misconceptions and Reevaluation—Polygraph Admissibility After Rock and Daubert"*, 1996 U.Ill.L.Rev. 363, 410.

I note that in recent opinions admitting the results of polygraph examinations, an expert psychophysiologist testified as to the reasons why the measurable physiological reactions are reliable indicators of whether the examinee is being truthful. *Galbreth*, 908 F.Supp. at 884; *United States v. Crumby*, 895 F.Supp. 1354, 1359 (D.Ariz., 1995). Absent such testimony, the necessary predicate for admissibility has not been demonstrated. *Chatwin v. Davis County*, 936 F.Supp. 832, 836 (D.Utah, 1996).

While it may be burdensome and expensive for the proponent of the evidence to have to call such a witness, it is difficult to see how the proponent can meet the burden under *Daubert* without such testimony. I do not think that reliance on citations to such court opinions in cases such as *Galbreth* or *Crumby* will suffice. The predicate must be established by evidence adduced in each case.[1]

---

**1.** Thus, I disagree with the approach which was taken in the case of *Ulmer v. State Farm Fire & Casualty Company*, 897 F.Supp. 299 (W.D.La., 1995). In that case, the proponent called only a certified polygraphist, or polygraph examiner. The opponent objected. The Court seemed to fill in the gaps by relying on statements in another case that ". . . polygraph theory and technique

have been tested, have been subject to peer review and extensive publication, and have been shown to have a not unreasonable potential rate of error." *Id.* at 303 citing *Posado*, 57 F.3d at 434. However, in that part of the *Posado* opinion which was cited, the Fifth Circuit was merely pointing out that ". . . tremendous advances have been made in polygraph instrumentation and

There are, of course, other questions, such as whether the particular tests were administered properly and in accordance with accepted standards, whether the evidence in the particular case will assist the trier of fact, Rule 702, F.R. Evid., and whether the probative value is substantially outweighed by the prejudicial effect of such evidence, Rule 403, F.R. Evid. There is also the question as to whether the admissibility should depend on some set protocol as between the parties as to how the test is to be conducted. *See United States v. Sherlin*, 67 F.3d 1208, 1216–17 (6 Cir., 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996). However, I need not reach these issues given my conclusion that the plaintiff has not met his initial burden under the *Daubert* opinion.

For all of these reasons, it is ORDERED that the Further Motions of the Defendants Denis Pierce, Thomas Burke and William Beck In Limine to Exclude Evidence of the Expert James A. Johnson (# # 81 & 88) be, and the same hereby are, ALLOWED and the Motion of the Defendants, Thomas Burke Et Al to Strike Late Designation of Plaintiff's Proposed Expert (# 55) be, and the same hereby is, DENIED as moot.

technique in the years since [the case of] *Frye* [*v. United States*, 293 F. 1013 (D.C.Cir., 1923) ]." *Posado*, 57 F.3d at 434. In its opinion in *Posado*, the Fifth Circuit was careful to state that it was not holding "... that polygraph examinations are scientifically valid ... We merely remove the obstacle of the per se rule against admissibility

..." *Id.* Given this statement, I do not believe it proper to rely on statements made in other opinions respecting the scientific validity of the theory of polygraphy; rather, a trial judge must rule on the issue on the basis of evidence presented before him or her.