UNITED STATES of America, Plaintiff,

v.

Sylvia REDSCHLAG, Defendant.

No. 97–1557M.

United States District Court,
D. Colorado.

July 28, 1997.

Carl Graham, Special Asst. U.S. Atty., Colorado Springs, CO, for U.S.

Stephen Anderson, Colorado Springs, CO, for Sylvia Redschlag.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court for trial on June 26, 1997 in Colorado Springs, Colorado.

## I.

Defendant Sylvia Redschlag (Defendant) was charged with assault pursuant to 18 U.S.C. § 113(a)(4). This assault allegedly occurred at her work site at Fort Carson, Colorado. Defendant is a civilian employee of the Department of the Army and allegedly assaulted a female employee of a government subcontractor.

The charge filed against Defendant is a Class B misdemeanor, carrying a maximum possible punishment of six months imprisonment and/or up to a $5,000 fine. 18 U.S.C. § 113(a)(4); 18 U.S.C. § 3571(b)(6). Since the possible incarceration did not exceed six months, Defendant was not entitled to a jury trial, but she did consent to having a Magistrate Judge hear her case.

The prosecution completed the presentation of its case, and Defendant began to present witnesses on her own behalf. Defendant's counsel called Danny J. Riley to the stand. The prosecution immediately objected, indicating that Mr. Riley would testify as to the results of a polygraph examination he administered to Defendant.

The Court requested of counsel for Defendant a proffer as to anticipated testimony. Counsel for Defendant indicated that Mr. Riley would testify that he is a private polygraph examiner, and previously was an examiner with the Criminal Investigation Division (CID) of the United States Army.

No prior notice had been provided by Defendant that she intended to offer the results of the polygraph examination into evidence. The Court indicated that it was unwilling to rule on the issue without an opportunity to do some research. The Court indicated that it would complete all other testimony and take the issue of Mr. Riley's testimony under advisement. The Court indicated that Defendant would be allowed to re-open her case to present Mr. Riley's testimony, if the Court found it admissible.

The Court directed that each side file briefs on the issue of the admissibility of polygraph examination results. Both sides have submitted their briefs, and further argument will be waived.

## II.

Defendant argues that the results of Mr. Riley's examination are admissible under the Federal Rules of Evidence and that failure to allow her to submit this testimony will violate her rights under the Sixth Amendment. Both issues are intertwined and will be discussed together.

For decades the admission of expert scientific evidence was governed by *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (1923). The D.C. Circuit held that expert testimony was admissible if the scientific technique is "generally accepted" as reliable within the appropriate scientific community. *Daubert v. Merrell Dow Pharmaceuticals,* 951 F.2d 1128, 1129–30 (9th Cir.1991). Absent such general acceptance, the testimony was inadmissible at trial. In *Frye*, defendant had made a request for admission of polygraph examination results, and that motion was denied.

The United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) re-examined the admissibility of expert scientific evidence in light of Fed. R.Evid.702. The Court rejected the "general acceptance" standard enunciated in *Frye.* The Court examined the Federal Rules of Evidence and how they impacted the admissibility of evidence.

> We interpret the legislatively enacted Federal Rules of Evidence as we would any statute. (cit.omitted). Rule 402 provides the baseline:

> "All relevant evidence is admissible, except as otherwise provide by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

"Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401. The

Rule's basic standard of relevance thus is a liberal one.

*Id.* at p. 587, 113 S.Ct. at pp. 2793–94. The Court went on to examine Rule 702 specifically.

Here there is a specific Rule that speaks to the contested issue. Rule 702, governing expert testimony, provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to under-stand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Nothing in the test of this Rule establishes "general acceptance" as an absolute prerequisite to admissibility. Nor does respondent present any clear indication that Rule 702 or the Rules as a whole were intended to incorporate a "general acceptance" standard.

*Id.* at p. 588, 113 S.Ct. at p. 2794. The Court rejected the "general acceptance" standard in *Frye* as incompatible with the Federal Rules of Evidence.

■ The Court held, though, that there were limits on the admissibility of scientific evidence.

That the *Frye* test was displaced by the Rules of Evidence does not mean, however, that the Rules themselves place no limits on the admissibility of purportedly scientific evidence. Nor is the trial judge disabled from screening such evidence. To the contrary, under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.

*Id.* at p. 589, 113 S.Ct. at pp. 2794–95. A trial judge must ensure that any scientific evidence or testimony is based upon scientific method and that there is established a standard of "evidentiary reliability." *Id.* at p. 590, 113 S.Ct. at p. 2795. The Court stated, in part, as follows:

Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id.* at pp. 592–93, 113 S.Ct. at p. 2796. The Court held that trial judges have the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at p. 597, 113 S.Ct. at p. 2799.

Defendant argues that *Daubert* allows her to present testimony concerning the result of the polygraph examination administered by Mr. Riley. Defendant points to several cases which have allowed consideration of such examination results under *Daubert. United States v. Galbreth,* 908 F.Supp. 877 (D.N.M. 1995) (evidence would be admissible based upon foundation established); *United States v. Pulido,* 69 F.3d 192 (7th Cir.1995)(no per se rule against admissibility of polygraph examination results); *United States v. Posado,* 57 F.3d 428 (5th Cir.1995)(per se exclusion reversed); *United States v. Piccinonna,* 885 F.2d 1529 (11th Cir.1989)(no inadmissibility per se). Defendant further argues that failure to admit the results of the polygraph examination, if a *Daubert* foundation is laid, will violate her Sixth Amendment rights. *See United States v. Scheffer,* 44 M.J. 442 (1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 1817, 137 L.Ed.2d 1026 (1997) (per se inadmissibility of polygraph examination results under Mil.R.Evid.707 unconstitutional).

The prosecution argues that the Tenth Circuit has barred the admissibility of polygraph examination results. *Palmer v. City of Monticello,* 31 F.3d 1499 (10th Cir.1994). In *Palmer,* the Tenth Circuit held that the "general rule is that polygraph results are

inadmissible." *Id.* at p. 1506. The court in *Palmer* was not presented with a *Daubert* issue, nor did a Sixth Amendment claim arise. *Palmer* does not provide much guidance as to the issue presented to this Court.

It also should be noted that other courts have not allowed consideration of polygraph examination results, even after *Daubert.* *United States v. Scarborough,* 43 F.3d 1021 (6th Cir.1994) (evidence not reliable); *Chatwin v. Davis County,* 936 F.Supp. 832 (D.Utah 1996); *People v. Lyons,* 907 P.2d 708(Colo.App.1995)(*Frye* test still applies to polygraph examination results in Colorado state courts). The issue of admissibility of polygraph examination results, thus, is unsettled. *See also,* McCall, "Misconceptions and Reevaluation—Polygraph Admissibility after Rock and Daubert," 1996 Ill.L.Rev. 363; Ardell and Peters, "Revisiting the Admissibility of Polygraph Evidence after Daubert," 25–FEB Colo.Law. 65.

Defendant has relied heavily on the opinion of Judge Vazquez in *United States v. Galbreth, supra.* In a well-written opinion, Judge Vazquez examined the evidence presented during a two-day *Daubert* hearing. The defendant presented Dr. David Raskin, PhD, then a professor at the University of Utah. Dr. Raskin was a professor of psychology who had administered polygraph examinations for several years and had conducted various scientific experiments to validate his use of the polygraph. Judge Vazquez found the proffered evidence to be admissible based upon Dr. Raskin's expertise, the independent review by another expert, and that the results would help assist the trier of fact.[1]

Defendant's proffer of Mr. Riley's testimony indicated that he would testify that he is a polygraph examiner and that he conducted an examination on May 30, 1997. In his report to defense counsel, Mr. Riley indicated, in part, as follows:

> [T]he following questions were asked of the examinee:
>
> (5) Q. Did you ever tell Sealander that you had hit Hanks?

> A. No.
>
> (7) Q. Did you ever tell Sealander that you hit Hanks while you were at the fax machine?
>
> A. No.
>
> (10) Q. Did you ever hit Hanks on purpose with your hand?
>
> A. No.

Exhibit A, attached to Defendant's motion for admission of polygraph testimony. His ultimate opinion apparently was that Defendant was truthful in her answers.

This Court will accept the proposition that in a given case a sufficient foundation can be laid under *Daubert* for admission of polygraph examination results. However, two reasons exist in this case for not allowing admission of the testimony of Mr. Riley.

First, there is no showing that Mr. Riley can testify as to the reasons for the reliability of the polygraph. The cases that have allowed the admission of such testimony have all been predicated on a scientific basis for the tests. *United States v. Galbreth, supra* (Dr. Raskin's scientific testing to validate the underlying concept of the polygraph); *United States v. Crumby,* 895 F.Supp. 1354 (D.Ariz.1995). As one court stated succinctly:

> I note that in recent opinions admitting the results of polygraph examinations, an expert psychophysiologist testified as to the reasons why the measurable physiological reactions are reliable indicators of whether the examinee is being truthful. (cit.omitted). Absent such testimony, the necessary predicate for admissibility has not been demonstrated. (cit.omitted).

*Jesionowski v. Beck,* 955 F.Supp. 149, 150 (D.Mass.1997). The proffer made by Defendant, including the documents attached to Defendant's motion, do not provide any basis for believing that Mr. Riley can provide the necessary predicate for the admissibility of the evidence. It appears from all informa-

---

1. The testimony of Dr. Raskin was never presented to the jury, as the prosecution dismissed the charges after completion of its case. *United States v. Galbreth,* 908 F.Supp. at p. 878, n. 1.

tion that Mr. Riley is a technician in the use of the polygraph, not a scientist able to detail the reasons for believing that the polygraph results are reliable.

■ Second, the questions used in Defendant's polygraph examination will not assist the trier of fact. Two of the questions deal with Defendant's discussions with Mr. Sealander, her supervisor. Defendant is not on trial for giving a false statement to Mr. Sealander or anyone else. Defendant is charged with assault pursuant to 18 U.S.C. § 113(a)(4). That statute reads as follows:

> (a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

> (4) Assault by striking, beating, or wounding, by fine under this title or imprisonment for not more than six months, or both.

The only question on the polygraph examination that may have any relevance was phrased as "[d]id you ever hit Hanks on purpose with your hand?" The term "on purpose" means, or could mean, intentionally, but § 113(a)(4) does not require specific intent as an element. *United States v. Juvenile Male*, 930 F.2d 727, 729 (9th Cir.1991)("criminal negligence or recklessness will suffice"). Thus, the question posed to Defendant would have injected an element that need not be proven by the prosecution. Where a question is ambiguous, the results of the polygraph examination as to that question need not be admitted. *United States v. Kwong*, 69 F.3d 663 (2d Cir.1995).

The Court holds that in this case there is no basis for admission of the polygraph examination results through Mr. Riley. In order for *Daubert* to be complied with, there must be a showing of scientific reliability. Such a showing requires the foundation used in *United States v. Galbreth, supra.* No such showing has been proffered in this case. In addition, the only question used in the examination would not assist the trier of fact.

■ Finally, Defendant has an obligation under Fed.R.Evid.702 to provide a scientific basis to ensure reliability before results of a polygraph examination are admitted into evidence. Defendant's rights under the Sixth Amendment were not violated when she failed to meet the threshold requirements of Rule 702 as interpreted in *Daubert*.

IT IS HEREBY ORDERED that Defendant's motion for admission of polygraph testimony is denied.