**UNITED STATES OF America,**

v.

**Luis Guillermo DUQUE.**

**Crim.A.No. 3:97–CR–5–JTC.**

United States District Court,
N.D. Georgia,
Newnan Division.

Jan. 9, 1998.

Steven Howard Sadow, Office of Steven Howard Sodow, Atlanta, GA, for Plaintiff.

Janis C. Gordon, Michael McDaniel, Office of U.S. Atty., Northern District of Georgia, Atlanta, GA, for Defendant.

## ORDER

CAMP, District Judge.

Prior to trial, Defendant filed a Motion to Admit Polygraph Evidence [# 29–1] and the United States filed a Motion in Limine [# 30–1], which sought to exclude this evidence. On December 16, 1997, this Court denied Defendant's motion to admit and granted the United States' motion in limine. The following Order explains this ruling.

## I. Background.

### A. Facts.

Defendant faces three drug trafficking charges stemming from his arrest on March 3, 1996. Initially, Defendant was stopped for two minor traffic violations. While Defendant was stopped, a police dog, trained to detect certain controlled substances, alerted to a portion of the truck that Defendant was driving. A subsequent search of the truck discovered ten kilograms of cocaine hidden in the gas tank. Following this discovery, De-

fendant was arrested and was charged with conspiracy to possess with the intent to distribute cocaine, possession with the intent to distribute cocaine, and traveling in interstate commerce for the purpose of conducting an unlawful activity. Each of these charges requires the Government to prove that Defendant *knew* that he was in possession of a controlled substance.

Before trial, Defendant indicated that he would testify at trial that he did not know the truck contained any controlled substances. Defendant also indicated that he would testify that he was paid to drive automobiles from Houston, Texas to Atlanta where the cars were sold at auction. According to Defendant's proffered testimony, he had made numerous such trips over the past few years.

Predictably, the United States disputed Defendant's claim. Accordingly, prior to trial, the Government indicated its intention to impeach Defendant's credibility in general and specifically to challenge Defendant's claim that he did not know he was transporting a controlled substance.

In order to corroborate his testimony, Defendant submitted to a polygraph examination. The examination was conducted by Mr. Richard D. Rackleff. Mr. Rackleff is a qualified and respected polygraph examiner who previously worked for the FBI for 27 years. Using the "control question method" of polygraph examination [1], Mr. Rackleff administered several "relevant questions" to Defendant. According to Mr. Rackleff's report, the polygraph examination reflected "no deception indicated" to the following relevant questions: "Did you have any agreement with anyone to transport illegal drugs to Georgia?" and "Prior to your arrest, were you aware that cocaine was concealed in that truck?".

Defendant moved to admit, and the Government moved to exclude, Mr. Rackleff's report and testimony. In addition, Defendant submitted to a second polygraph exami-nation. This examination was administered by an examiner selected by the Government. The Government's expert concluded that the examination indicated deception in response to the administered relevant questions.

## B. The Parties' Contentions

Defendant contends that binding Eleventh Circuit authority allows the admission of the polygraph evidence in this case. *United States v. Piccinonna,* 885 F.2d 1529, 1537 (11th Cir.1989). According to defendant, in *Piccinonna,* the Eleventh Circuit affirmatively made polygraph evidence admissible under two circumstances—(1) stipulation of the parties and (2) for corroboration or impeachment, subject to certain preconditions. Therefore, according to Defendant, his expert's opinion based on the polygraph examination is admissible if it is offered for corroboration, the conditions stated in *Piccinonna* are met, and the examination was properly conducted.

The Government, on the other hand, argues that the Court must apply Rule 702 of the Federal Rules of Evidence to determine, as a preliminary matter, the relevance and reliability of the proffered evidence. The Government notes that the Supreme Court has held that

> whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

1. In the control question technique, the control questions are designed to arouse the concern of the innocent subject, and the subject is expected to react more strongly to them than the relevant questions if he is not deceptive. The relevant questions specifically concern the investigation at hand. This is a widely accepted polygraph technique. *See United States v. Galbreth,* 908 F.Supp. 877 (D.N.M.1995); McCall, "Misconceptions and Reevaluation—Polygraph Admissibility after Rock and Daubert," 1996 U.Ill.L.Rev. 363, 378.

## C. Evidentiary Hearing

Pursuant to Rule 104 of the Federal Rules of Evidence, the Court conducted an evidentiary hearing to determine the admissibility of polygraph evidence. At this hearing, both parties had the opportunity to present evidence concerning the admissibility of the evidence proffered by Defendant.

At this hearing, the Government offered significant evidence that polygraph testing was not reliable. The Government offered the testimony of Dr. Theodore P. Cross, a psychologist who has researched the validity and reliability of polygraph testing. In general, Dr. Cross testified that, based on his review of the literature and research on polygraph testing, (1) the control-question method of polygraph examinations has not been adequately tested, (2) articles endorsing the reliability of polygraph examinations have not been subjected to peer review in the relevant scientific community, and (3) the reliability of polygraph examinations has not gained general acceptance among psychologists.

On the other hand, Defendant offered the testimony of Mr. Rackleff, who had administered the polygraph examination to Defendant. Mr. Rackleff offered his opinion about the reliability of the control-question method of polygraph examinations. However, Mr. Rackleff is not a psychologist and does not have any scientific training. Accordingly, the Court concluded that he could not offer expert testimony about whether the reliability of polygraph examinations has been tested, whether the theories underlying polygraph examinations have been subjected to peer review, and whether polygraph testing has gained general acceptance in the relevant scientific community. Instead, Mr. Rackleff testified about the examination that he administered to Defendant and his method for evaluating this examination. The Court accepted that Mr. Rackleff properly administered the test to Defendant.

In addition, Defendant offered several articles from scholarly journals in support of the reliability of polygraph evidence in general. The articles relate to the work of or are authored by David Raskin, a leading proponent of the use of the polygraph.

## II. The Standard for Admissibility of Polygraph Evidence

### A. The *Piccinonna* Opinion

In *Piccinonna*, the Eleventh Circuit Court of Appeals went further than any other federal appellate court in allowing polygraph evidence at trial without a stipulation. *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir.1989). Even though the trial court in *Piccinonna* had not held an evidentiary hearing on the reliability of polygraph evidence, the Eleventh Circuit noted that polygraph testing had gained increasingly widespread acceptance. *Id.* at 1535. The court concluded that, although "polygraphy is a developing and inexact science," a *per se* rule disallowing polygraph evidence in all circumstances was no longer warranted. *Id.*

The court held that polygraph evidence **"may be admitted"** to corroborate or impeach a witness at trial subject to three preliminary conditions. However, the court also specifically left the admissibility of polygraph evidence to the discretion of the trial court and the application of the Federal Rules of Evidence:

> Neither of these two modifications to the per se exclusionary rule should be construed to preempt or limit in any way the trial court's discretion to exclude polygraph expert testimony on other grounds under the Federal Rules of Evidence. Our holding states merely that in the limited circumstances delineated above, the *Frye* general acceptance test does not act as a bar to admission of polygraph evidence as a matter of law. As we have stated, the chief criterion in determining whether expert testimony is appropriate is whether it will help the trier of fact to resolve the issues. Fed.R.Evid. 702....

*Id.* The court further noted that, in addition to Rule 702, polygraph evidence must withstand the balancing test of Rule 403. *Id.* at 1536.

. Thus, despite Defendant's arguments, *Piccinonna* does not mandate the admissibility of all polygraph evidence that is proffered for the purpose of corroboration. Instead, the

Court of Appeals left the decision of polygraph admissibility to the trial court's discretion in applying Rules 702 and 403.

## B. The *Daubert* Decision

Since the *Piccinonna* decision, the Supreme Court has clarified the standard for the admissibility of all expert scientific evidence under Rule 702. In *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court rejected the "generally accepted" test for the admissibility of scientific expert testimony, which had been articulated in *Frye v. United States,* 293 F. 1013 (D.C.App.1923) and nearly universally followed for decades. The Court reasoned that Rule 702 of the Federal Rules of Evidence had superceded the *Frye* test and that the narrow "general acceptance" test was incompatible with Rule 702. *Daubert,* 509 U.S. at 589, 113 S.Ct. at 2794–95. Instead of the *Frye* test, the Court concluded that Rule 702 required district courts to ensure that proffered expert testimony is both reliable and relevant. *Id.* at 594, 113 S.Ct. at 2797. To assist the district courts in this task, the Court identified several factors that can be used to evaluate the reliability of proffered scientific testimony—whether the proffered theory or technique has been tested, whether the theory or technique has been subjected to peer review and publication, what is the known or error rate, and whether the theory has gained "general acceptance" in the relevant scientific community. *Id.* at 593–94, 113 S.Ct. at 2796–97.

Therefore, under *Daubert,* before this Court can admit into evidence any expert scientific testimony including polygraph evidence, the Court must ensure that the evidence is both relevant and reliable. Until the admissibility of polygraph evidence is settled by binding precedent, the resolution of this issue will require an evidentiary hearing. At this hearing, the proponent of the evidence will have the opportunity to lay the necessary foundation under Rule 702 for admissibility. If the foundation can be laid, the party opposing admission of the evidence will have the burden of establishing its inadmissibility under Rule 403.

## III. Discussion

In this case, Defendant did not establish the admissibility of the proffered evidence. The evidence was proffered for an appropriate purpose under *Piccinonna;* however, Defendant failed to establish the necessary foundation for the admissibility of scientific evidence required by the Supreme Court in *Daubert.* Moreover, even if Defendant had established admissibility, the Court likely would have excluded the evidence under Rule 403.

In the evidentiary hearing, Defendant failed to establish the reliability of the proffered evidence. The Government produced convincing testimony that significant problems exist in testing the reliability of polygraph examinations. In addition, the Government established that the "control-question" method of polygraph examination has not been subjected to adequate peer review and has not gained general acceptance in the relevant scientific community. In this regard, the Court notes that the relevant community consists of scientists engaged in psychological testing, not polygraph examiners.

Conversely, Defendant introduced only the testimony of the polygraph examiner who had administered the test to Defendant. While the Court found this witnesses credible and capable of testifying about a specific polygraph examination, he was not competent to testify about the scientific reliability of the control-question method of polygraph examination.

The Court considered several articles which Defendant produced in support of the credibility of polygraph evidence; however, the articles were insufficient to overcome the evidence produced by the Government.

In summary, the evidence presented at the hearing did not establish the validity of the methodology underlying polygraph examinations. On the contrary, the evidence indicated that the premise underlying a polygraph examination—i.e. that the subject's truthfulness or deception can be inferred from physiological responses, is questionable. Indeed, the relevant scientific community agrees that

there is no unique physiological response to deception. Accordingly, as the proponent of the evidence, Defendant failed to carry his burden of establishing its reliability. *Cf. United States v. Redschlag,* 971 F.Supp. 1371, 1374 (D.Colo.1997).

Furthermore, even had Defendant established reliability and relevance, the proffered evidence would likely be inadmissible under Rule 403 of the Federal Rules of Evidence. Its probative value would be slight and would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

The polygraph examiner can testify to only one matter—that, in his or her opinion, the defendant's physiological responses indicated a lack of deception when, on another occasion outside of court, the defendant was asked certain questions. This opinion is a secondary and indirect indicia of truthfulness.

Jurors are also capable of evaluating secondary indicia of credibility such as demeanor, but are also required to evaluate the witness's answers in the context of all objective evidence presented at trial. Undue focus on the one opinion of the examiner, its scientific basis, and the examiner's qualifications and methodology will necessarily distract the jury from its duty to evaluate all of the evidence.

The Court has no doubt that the polygraph is an effective investigative tool and that a qualified examination can sometimes cause a subject to admit deception. *See United States v. Pitner,* 969 F.Supp. 1246 (W.D.Wash.1997). On the other hand, to shift the focus of trial to determining truthfulness based upon one person's opinion unduly invades the province of the jury to determine the credibility of all witnesses. *See State v. Porter,* 241 Conn. 57, 698 A.2d 739 (Conn.1997). Such a procedure would make time-consuming "battles of experts" a standard feature of criminal trials.[2] With the lack of standardization of polygraph procedure and a lack of agreement as to necessary qualifications of examiners, the jury

would have very little basis to evaluate the conflicting expert testimony.

For the above reasons, Defendant's Motion to Admit Polygraph Evidence [# 29–1] was **DENIED** and the United States' Motion in Limine [# 30–1] was **GRANTED.**

2. In addition, as the Connecticut Supreme Court recognized in *Porter,* the routine introduction of polygraph evidence might cause jurors to draw an adverse inference in cases where no polygraph evidence is offered. 698 A.2d at 771.