Brett G. PALMER, Plaintiff–Appellee,

v.

CITY OF MONTICELLO and Kent Adair, individually and as Chief of Police, Defendants–Appellants.

No. 91–4221.

United States Court of Appeals, Tenth Circuit.

June 30, 1994.

Peter Stirba of Stirba & Hathaway, Salt Lake City, UT, for defendants-appellants.

Erik Strindberg and Martha S. Stonebrook of Cohne, Rappaport & Segal, Salt Lake City, UT, for plaintiff-appellee.

Before EBEL and HOLLOWAY, Circuit Judges, and COOK,* District Judge.

HOLLOWAY, Circuit Judge.

The City of Monticello, Utah, and its Chief of Police, Kent Adair, appeal a judgment on a jury verdict for the plaintiff, Brett Palmer, a former Monticello police officer. Palmer brought this action under 42 U.S.C. § 1983, claiming his due process rights were violated when he was terminated from employment as a Monticello police officer. A state law claim was also made but is not involved now. The jury awarded Palmer $1 in damages from Adair and $253,188 from the city, 731 F.Supp. 1503. Both defendants moved for judgment NOV, a new trial, or remittitur. The district court denied that motion and defendants appealed.

* The Honorable H. Dale Cook, United States District Judge for the Northern District of Okla-

**I**

Stan Olsen, a Utah Highway Patrol Officer who occasionally rode with Palmer as a back-up officer after his highway patrol duties were finished, made a statement to one of his superiors accusing Palmer of falsifying a speeding ticket on the night of March 28, 1987. The accusation was not made by Olsen until some 20 months after the alleged incident. The accusation was reported to Chief Adair in late November 1988. Brief of Appellants at 4. Adair made his own investigation of the charge. Adair brought the accusation to Palmer's attention, and Palmer denied having falsified the ticket. This occurred at a meeting also attended by the Mayor of Monticello and the city attorney. Palmer was told he could have an attorney present but he declined.

As part of Adair's investigation, Adair asked Palmer to take a polygraph examination. Palmer agreed on the condition that Olsen take one as well. The polygraphs were administered on January 19, 1989, and the results apparently indicated that Olsen was more likely being truthful than Palmer. Adair found out that there was a record that the ticket in question issued to a Stephen Benton was paid. Supp.App. at 134; II App. at 373. That same driver had earlier the same evening been ticketed for speeding by another officer, and that ticket was also paid. Id. at 135. Adair gave Palmer a letter of termination on January 20, 1989. That letter mentioned several alleged transgressions by Palmer (all quite old), but stated that the ticket in question was enough to justify his termination.

A city council meeting was held on January 24, 1989, which Palmer attended. There was testimony at trial that before the meeting started, Palmer was asked whether he wanted counsel and he replied that "he didn't need any." II App. 446, 447. The council heard testimony regarding the incident by Palmer and Adair. Olsen was not present and no means of confronting or questioning him was made available at the meeting.

homa, sitting by designation.

Adair stated at the council meeting that the allegation from Olsen was that the man was not speeding, he was going 53 or 54 mph in a 55 mph zone, and that Palmer ran up the speed, using his patrol car speed, and locked that in. II App. at 368. At the same meeting, Palmer gave his version of the incident. He said that for the fourth time, he maintained he was not guilty of making a fraudulent radar stop. *Id.* at 377. Palmer said that when the car went by "I [got] a 68." *Id.* at 381.

After the hearing of January 24, one council member discussed Palmer with several people, asking them whether the city had problems with Palmer. It is not clear whether he actually spoke about the accusations against Palmer specifically or whether the people he spoke with already knew about them. *See* Appellee's Supp.App. at 119–122. That councilman also conducted several "road tests" to check out the viability of Palmer's story about the ticket. *See id.* at 123–125.

During the evening of January 25, 1989, the city council had a meeting which was attended by between 25 and 30 members of the public, as well as one newspaper reporter. *Id.* at 127. There is evidence that the council discussed the charges against Palmer with observers at that meeting. *See id.* at 119–127. The council then went into executive session, came back into public session, and voted to uphold Palmer's termination. Palmer was informed by a letter delivered to Palmer on January 26, 1989. II App. at 419–20. According to the defendants, at that time the city manager offered Palmer another hearing at which he could have an attorney and witnesses present, but Palmer declined. The city manager later informed Palmer that he should retain his own attorney to determine what rights of appeal he had, if any.

Palmer filed this action on April 6, 1990. He claimed that the defendants had violated § 1983 by publicizing false and stigmatizing information about the grounds for his termination, and by depriving him of fair and adequate pre- and post-termination notices and hearings. On October 19, 1990, while this § 1983 action was still pending in the district court, the city gave Palmer's attorneys a "Notice of Due Process/Name Clearing Hearing." I App. 91–93. This was to be held before a state administrative law judge (paid by the city) to determine the propriety of Palmer's termination and the procedures followed. Palmer declined to attend, but the city went forward with the hearing in his absence on October 31 and November 1, 1990. The ALJ issued a 37–page written opinion, finding that the city had acted properly in all regards.

The jury, however, found for Palmer and awarded him damages. The jury responded to special interrogatories and found that Chief Adair had deprived Palmer of a liberty interest without adequate notice and hearings; that the city had deprived Palmer of either a liberty or property interest, or both, without adequate notice and hearings; and that Palmer had not proved that the city terminated Palmer's employment without cause in violation of an implied contract between him and the city. The defendants moved for judgment notwithstanding the verdict, for a new trial, or a remittitur. All such relief was denied and this appeal followed.

## II

Palmer claimed, and the jury found, that the defendants had deprived him of a liberty interest without adequate notice and hearings.[1] The defendants argue that Palmer failed to present sufficient evidence on two of the required elements of this claim, thus entitling them to a directed verdict or judgment notwithstanding the verdict, which they sought by the motion below that was denied. Specifically, "Defendants contend that Palmer failed to prove that the statements were false and that they were made public." Brief of Appellants at 10–11.

In reviewing the denial of a motion for judgment NOV, we must decide whether there is evidence in the record on which the

---

1. Since we are convinced that the jury did not base its damage awards on the property interest claim, *see* Part III, *infra*, we need not consider the challenges by the defendants to the sufficiency of the evidence on the plaintiff's property interest claims.

jury could properly have found for Palmer. *See Aguinaga v. United Food and Commercial Workers Int'l Union,* 993 F.2d 1463, 1469 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 880, —— L.Ed.2d —— (1994); *Goodwin v. Enserch Corp.,* 949 F.2d 1098, 1100–01 (10th Cir.1991). In making that inquiry we must view the evidence and all inferences in the light most favorable to Palmer, the non-moving party, and we must be guided by the requirements of the underlying cause of action. *See Goodwin,* 949 F.2d at 1100–1101.

■■■■ To support a claim for deprivation of a liberty interest, the plaintiff must show that a public employer took "action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities...." *Rusillo v. Scarborough,* 935 F.2d 1167, 1171 (10th Cir.1991) (quoting *Melton v. City of Oklahoma City,* 928 F.2d 920, 927 (10th Cir.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991), *and cert. denied,* —— U.S. ——, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991), *and cert. denied,* —— U.S. ——, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991), *and cert. denied,* —— U.S. ——, 112 S.Ct. 297, 116 L.Ed.2d 241 (1991)). The plaintiff need not prove *actual* loss of a job opportunity; it is sufficient to prove termination based on a publicized false charge of sufficient opprobrium that would make the plaintiff an unlikely candidate for employment. *See Melton,* 928 F.2d at 927 n. 11. We are satisfied that an accusation that a police officer falsified a speeding ticket qualifies as a stigmatizing charge which amply supports that element of a liberty interest violation.[2]

■■■■ We turn to the defendants' two specific challenges to the proof on the liberty interest claim. As noted, they say first that Palmer failed to prove the statements in the accusation were false. We are satisfied that there was ample evidence the jury could have relied on to find that the accusation was false. *See* II App. at 377, 380–81, 398–99, 406. The defendants do not analyze that evidence and instead base their attack on Palmer's claim of a false accusation on inferences they draw from the jury's response to Special Verdict Question No. 5, *i.e.* whether plaintiff proved that the city "terminated plaintiff's employment without cause in violation of an implied contract...." The jury answered "no" and defendants infer that the jury thus found that the statements in the accusation were not false. Brief of Appellants at 11.

We disagree. The jury could have logically found against Palmer on the implied contract claim without finding that the accusation was not false.[3] Thus the proof of falsity of the accusation is not undermined by these arguments of the defendants.

■■■■ The defendants' second challenge to the proof on the liberty interest claim focuses on whether there was proof of publication. There is no serious question whether publication actually occurred since some 25 to 30 public observers were present at the January 25 council meeting, including a newspaper reporter. Supp.App. at 119–127. The remaining contention is a purely legal argument. Defendants maintain that statements made by city council members to the public at the January 25 meeting were absolutely

---

2. The nature of the accusation made is undisputed, and we hold that accusation was stigmatizing—a determination for the court to make. *See Melton v. City of Oklahoma City,* 928 F.2d at 927–28. Moreover, the Monticello city council adopted the accusation against Palmer. II App. at 323–24, 419–420.

3. The trial judge's order, pp. 6–7, pointed out that Interrogatory 2 was disjunctive so that the jury could have found for Palmer on *either* the property or liberty interest claim. The jury could have rejected the property interest claim consis-

tently with a possible finding that no employment contract existed. The liberty interest claim as presented to the jury was not affected by whether an agreement existed between the parties as to what limitations were placed on defendants' ability to discharge Palmer.

The judge said that a perfectly reasonable interpretation of the jury's special verdict findings is that the jury found for Palmer on the liberty interest claim, and against him on the property interest claim and the employment contract claim. Order at 7. We agree.

privileged under Utah law. Utah Code Ann. § 45-2-3 (1988).[4]

We disagree. We are persuaded that the trial judge was correct in holding that a state libel and slander law privilege may not limit a cause of action for deprivation of a constitutionally protected liberty interest. Order Denying Motion for Judgment NOV, etc., at 8. The judge noted that the only authority cited by defendants was *Kendall v. Board of Education of Memphis,* 627 F.2d 1, 5 (6th Cir.1980), and that case is clearly distinguishable. There the Sixth Circuit held that the Board was required by state law to make the charges in question public and thus the Board had not voluntarily disseminated the allegedly false information. The trial judge here noted that no evidence was presented at trial, and no argument was made below, that the defendants were "required" to voluntarily disseminate the charge against Palmer.

More fundamentally, Palmer's federal constitutional claim of violation of a liberty interest is not restricted by the privilege contours of state defamation law. *Duck v. Jacobs,* 739 F.Supp. 1545, 1551 (S.D.Ga.1990) (plaintiff's § 1983 "reputational liberty claim" could not be restricted by state defamation law providing absolute privilege to defendants). *Cf. Marrero v. City of Hialeah,* 625 F.2d 499, 517 n. 24 (5th Cir.1980), *cert. denied sub*

*nom. Rashkind v. Marrero,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). As the Supreme Court noted in *Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558–59 n. 8, 62 L.Ed.2d 481 (1980):

> Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.... The immunity claim raises a question of federal law.

(citations and internal quotations omitted); United States Constitution art. VI, cl. 2. *See also Mitchell v. City of Sapulpa,* 857 F.2d 713, 720 (10th Cir.1988) (the court is not bound by the state law of torts or the defenses of privilege which that law provides in interpreting the scope of § 1983) (citations omitted); *Smith v. Losee,* 485 F.2d 334, 341 (10th Cir.1973) (en banc) ("the federally created cause of action cannot be restricted by state laws or rules relating to sovereign immunity nor to official privilege."), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974).[5]

---

4. Utah Code Ann. § 45-2-3 provides:
 A privileged publication or broadcast which shall not be considered as libelous or slanderous per se, is one made:
 (1) In the proper discharge of an official duty.
 (2) In any publication or broadcast of or any statement made in any legislative or judicial proceeding, or in any other official proceeding authorized by law.
 ....
 (4) By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof, or of a charge or complaint made by any person to a public official, upon which a warrant shall have been issued or an arrest made.
 (5) By a fair and true report, without malice, of the proceedings of a public meeting, if such meeting was lawfully convened for a lawful purpose and open to the public, or the publication or broadcast of the matter complained of was for the public benefit.

5. *Accord Davis v. Little,* 851 F.2d 605, 610 (2d Cir.1988) (" '[A] state rule of immunity or privi-

lege which allows a state officer to escape liability for a deprivation of 'rights, privileges, or immunities secured by the Constitution of the United States' is simply not controlling under 42 U.S.C. § 1983.' ") (quoting *Jones v. Marshall,* 528 F.2d 132, 137 (2d Cir.1975); *McLaughlin v. Tilendis,* 398 F.2d 287, 290 (7th Cir.1968) (holding that under the Supremacy Clause, state tort immunity act would not shield defendants from liability because the cause of action was grounded on a federal statute, *i.e.* 42 U.S.C. § 1983); *Bell v. Wolff,* 496 F.2d 1252, 1253 (8th Cir.1974) ("[T]he measure, scope, and application of an asserted immunity under § 1983, arising, as it does, under a federally created cause of action, cannot be restricted or enlarged by state laws concerning official privilege or immunity."); *Bichrest v. School Dist. of Philadelphia,* 346 F.Supp. 249, 251 n. 5 (E.D.Pa.1972) ("Under the Supremacy Clause of the Federal Constitution, immunity under state law will not protect defendants against a cause of action grounded on a federal statute.") (citation omitted); *cf. Fidtler v. Rundle,* 497 F.2d 794, 800 (3d Cir.1974); *see generally Hillsborough County, Fla. v. Automated Medical Lab., Inc.,* 471 U.S. 707, 712–13, 105

In sum, we reject the defendants' argument that the trial judge erred in denying the motion for judgment NOV with respect to the liberty interest claim.

## III

The defendants claim that the jury's answers to the special verdict questions were irreconcilably inconsistent.[6] Hence they say there should be a new trial.

[6, 7] We cannot agree. Trial courts have a duty to attempt to reconcile juries' answers to special verdict questions in order to avoid the need for retrials. *See Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963) ("We ... must attempt to reconcile the jury's findings, by exegesis if necessary, ..., before we are free to disregard the jury's special verdict and remand the case for a new trial."); *Harvey by Harvey v. General Motors Corp.*, 873 F.2d 1343, 1347 (10th Cir.1989) (under Fed.R.Civ.P. 49(a) and (b) "the trial court has a duty to try to reconcile the answers to the case to avoid retrial."). If there is any view of the case which makes the answers consistent, the case must be resolved in that way. *See Gallick*, 372 U.S. at 119, 83 S.Ct. at 666 ("But it is the duty of the courts to attempt to harmonize the answers [to special interrogatories], if it is possible under a fair reading of them: 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' ")

■ The trial judge analyzed the special verdict findings and concluded, *inter alia*, that

A perfectly reasonable interpretation of the jury's special verdict findings is that the jury found in favor of plaintiff on the liberty interest claims and against plaintiff on the property interest claim and the employment contract claim.

Order at 7.

We agree. In fact, we feel that the *only* reasonable interpretation of the special verdict findings is that the jury found for the plaintiff on the liberty interest claims, and against the plaintiff on the property interest claim and the employment contract claim. We know that the jury had to find that the plaintiff was fired without cause in order to answer as it did on the liberty interest claims against both Chief Adair and the city in Interrogatories 1 and 3 (*i.e.* plaintiff's being fired without cause was a *sine qua non* of his liberty interest claim). *See* Instructions 22 and 23, Order at 6–7. Accordingly, the "no" answer to Interrogatory No. 5 had to rest on a finding of no implied contract.[7] Consequently, the jury must have rejected plaintiff's property interest claim. *See* Interrogatory No. 3.

---

S.Ct. 2371, 2374–75, 85 L.Ed.2d 714 (1985) ("It is a familiar and well-established principle that the Supremacy Clause ... invalidates state laws that 'interfere with, or are contrary to,' federal law.") (citation omitted); *Lawrence County v. Lead–Deadwood School Dist. No. 40–1*, 469 U.S. 256, 260, 105 S.Ct. 695, 698, 83 L.Ed.2d 635 (1985) ("Even if Congress has not expressly preempted state law in a given area, a state statute may nevertheless be invalid under the Supremacy Clause if it conflicts with federal law or 'stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.' ") (citations omitted).

6. Only Special Verdict Questions 1, 3, and 5 are at issue here. They were:

*QUESTION NO. 1*
Has Plaintiff proven by a preponderance of evidence that defendant Kent Adair deprived

Plaintiff of a *liberty* interest without adequate notice and hearings? [Answer—"Yes"]
*QUESTION NO. 3*
Has the Plaintiff proved by a preponderance of evidence that defendant City of Monticello deprived Plaintiff of *either* a *property* interest *or* a *liberty* interest, or both, without adequate notice and hearings? [Answer—"Yes"]
*QUESTION NO. 5*
Has the Plaintiff proved by a preponderance of evidence that the City of Monticello terminated plaintiff's employment without cause in violation of an implied contract between himself and the City of Monticello? [Answer— "No"]
I App. at 217–219 (emphasis added).

7. We but briefly note that the liberty interest claims as presented to the jury were not affected by whether an agreement existed between the parties as to what limitations were placed on the defendants' ability to discharge plaintiff.

## IV

We turn to the defendants' claims of error in evidentiary rulings by the trial judge.

### 1. Exclusion of Evidence of the Polygraphs

The defendants claim that the fact that the polygraph tests were performed should have been admitted as a part of the operative facts surrounding the decision to terminate Palmer. They argue that the actual results of the tests were irrelevant to their purpose, which was merely to show the precautions taken before they decided to terminate Palmer.

The general rule is that polygraph results are inadmissible. *See United States v. Whitt*, 718 F.2d 1494, 1501 (10th Cir.1983); *United States v. Soundingsides*, 820 F.2d 1232, 1241–42 (10th Cir.1987). If it is relevant that the polygraph examination was performed, as a fact in and of itself, regardless of what the results were, then that fact may be admissible as an operative fact. However the trial court must still determine whether to admit or exclude the evidence on grounds of undue prejudice. *See Brown v. Darcy*, 783 F.2d 1389, 1397 & n. 14 (9th Cir.1986). "[A] trial court will rarely abuse its discretion by refusing to admit [polygraph] evidence, even for [such] a limited purpose and under limited conditions." *United States v. Falsia*, 724 F.2d 1339, 1342 (9th Cir.1983). Moreover, even if polygraph evidence would be admissible as an operative fact, the trial court may exclude it if the manner of the introduction of the evidence would allow or encourage the jury to draw improper inferences.[8] *See Barnier v. Szentmiklosi*, 810 F.2d 594, 596–97 (6th Cir.1987).

The Sixth Circuit recently permitted the use of polygraph evidence concerning a defendant who had previously been an FBI informant. *See United States v. Weiner*, 988 F.2d 629, 633 (6th Cir.), *cert. denied*, ―― U.S. ――, 114 S.Ct. 142, 126 L.Ed.2d 105 (1993). The court permitted the use of the evidence because the "prosecution could only have shown that Weiner took the examinations and, as a result, he was no longer used by the FBI. This was not to prove that he had lied in his answers to the questions, but to show why he was no longer being used as an informant." *Id.* Although the reasoning is somewhat similar to that urged on us by the defendants, we do not believe that *Weiner* shows that here the district judge abused his discretion.

Here the district judge ruled that the polygraph evidence was "far more prejudicial than the value that it really has . . . ." Supp. App. at 95. We find no abuse of discretion.

### 2. Evidence of Alleged Falsification of Employment Application

The defendants also claim that the trial court erred by not permitting them to use evidence that Palmer allegedly falsified an answer to one question on his employment application. They wished to use this evidence to impeach Palmer at trial. The question asked on the form was whether Palmer had "any physical, mental or medical impairment or disability that would limit [his] job performance" as a police officer. Palmer answered "no." The defendants wished to cross-examine him regarding concerns raised by his supervisor in his former job that because of psychological tests, the supervisor felt that Palmer should not have continued to be a Highway Patrol peace officer. The trial

---

8. We agree with Palmer's contention that the jury, possessed of the knowledge that polygraphs had been performed on both Olsen and Palmer, would have been able to figure out that Olsen had "passed" while Palmer had "failed." *See* Appellee's Brief at 32. That would have been an end run around the general inadmissibility of polygraph results which could have interfered with the jury's resolution of the crucial question whether Palmer falsified the ticket.

This case simply is not like cases in which litigants offer to prove that they took, agreed to take, or refused to take polygraphs to demon-

strate their good faith (or lack thereof), because in those cases the taking, offering, or refusal to take the tests carried independent significance. *See, e.g., Underwood v. Colonial Penn Ins. Co.*, 888 F.2d 588, 590–91 (8th Cir.1989) (refusal to take test admissible); *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273, 277 (6th Cir.1985) (willingness to submit to test admissible). *But see Wolfel v. Holbrook*, 823 F.2d 970, 974–75 (6th Cir.1987) (willingness to submit to test not automatically admissible, refusal to submit to test not admissible at all), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988).

court refused to allow the defendants to use that information.

The defendants argue that under Fed. R.Evid. 608(b),[9] the trial court abused its discretion by not permitting them to inquire about this prior act by Palmer (answering the above question in the negative). The defendants claim that Palmer placed his credibility in issue and that they were entitled to attack it by cross-examination on the point.

The defendants' argument is unpersuasive. It is a requirement of Fed.R.Evid. 608(b)(1) that the prior act have some bearing on the witness' credibility. The defendants have claimed that Palmer gave a false answer to one question on his employment application, but we read the district court to have felt that it was not clear whether his answer was actually false or not. We agree. It is by no means clear that merely because Palmer underwent psychological counseling, and his former supervisor felt that he should no longer be a Highway Patrol officer, his negative answer to this particular question on the application was false.[10] The district judge did not abuse his discretion in finding that the resolution of that question would have diverted the trial from its main focus. Supp. App. at 202–203.[11]

### 3. *Exclusion of Evidence of the ALJ Hearing*

Prior to trial Palmer filed a motion in limine to exclude evidence of the ALJ hearing which was opposed by the defendants.

The court granted the motion and prohibited the introduction of evidence regarding the substance of that hearing (although the court did allow sworn testimony from the hearing to be used so long as the jury was told that it came from "a prior proceeding in this case.") *See* I App. at 144–145. The defendants argue that the evidence should have been admitted, at least to show that they attempted to mitigate the damage to Palmer.

We agree with Palmer that the "hearing" was much more like an arbitration than an actual administrative hearing. It appeared to be the result of a private arrangement between the city and the ALJ. *See* I App. at 88–93. As such, we feel that it was not an abuse of discretion to exclude evidence of the hearing from the trial. The Supreme Court has held that arbitrations and other types of non-judicial dispute resolution devices are not substitutes for judicial resolution of § 1983 claims. *See McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 290–92, 104 S.Ct. 1799, 1803–04, 80 L.Ed.2d 302 (1984); *see generally Atchison, T. & S. F. R. Co. v. Buell,* 480 U.S. 557, 564–65, 107 S.Ct. 1410, 1414–16, 94 L.Ed.2d 563 (1987) ("This Court has, on numerous occasions, declined to hold that individual employees are, because of the availability of arbitration, barred from bringing claims under federal statutes.") (citing *McDonald,* 466 U.S. 284, 104 S.Ct. 1799) (other citations omitted). The fact-finding that occurs in arbitration is simply not the same as that which occurs in a federal court—the rules of evidence are different (here, nonexistent, *see* I

---

**9.** "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness ..." Fed.R.Evid. 608(b) (emphasis added).

**10.** "Do you have any physical, mental or medical impairment or disability that would limit your job performance for the position for which you are applying?" II App. at 425.

**11.** *See Outley v. City of New York,* 837 F.2d 587, 595 (2d Cir.1988) (in order for a jury properly to consider the prior acts, the particular details of

the acts must be in evidence, and this would invite "detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues"); *United States v. Beauchamp,* 986 F.2d 1, 3 n. 1 (1st Cir.1993) ("Like the general rule barring the use of extrinsic evidence to impeach a witness on a collateral matter through contradiction, the purpose of Rule 608(b)'s prohibition of extrinsic evidence is to avoid holding mini-trials on irrelevant or collateral matters.") (citations omitted). *But see United States v. Sperling,* 726 F.2d 69, 75 (2d Cir.) (holding it permissible to cross-examine a witness about false credit card applications he had made), *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3516, 82 L.Ed.2d 824 (1984).

App. at 93 ¶ 2) and compulsory process is not available. *See McDonald,* 466 U.S. at 291, 104 S.Ct. at 1803–04.

Therefore, federal courts are given discretion to decide whether to admit or exclude evidence of arbitral proceedings, keeping in mind that Congress intended that § 1983 claims be resolved judicially as fully as possible. *See id.* at 292 n. 13, 104 S.Ct. at 108 n. 13. Given the Court's directions in *McDonald,* there were substantial reasons to exclude evidence of the so-called "name-clearing hearing." Moreover, the hearing occurred some 21 months after Palmer's termination,[12] offering only a severely impaired remedy to Palmer. The hearing offered was not "granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). We find no error in the exclusion of evidence of the hearing.

## V

We turn to the challenge to the size of the damage award which the defendant city attacks as unsupported by the evidence and excessive.

 We review the trial court's decision regarding remittitur for an allegedly excessive damages award for an abuse of discretion. *See Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1011 (10th Cir.1992); *Royal College Shop, Inc. v. Northern Ins. Co. of N.Y.,* 895 F.2d 670, 677 (10th Cir.1990). A trial judge should not order a remittitur or a new trial when the size of the verdict turns upon conflicting evidence and the credibility of witnesses. *See Farber v. Massillon Bd. of Educ.,* 917 F.2d 1391, 1395 (6th Cir.1990), *cert. denied,* 498 U.S. 1082, 111 S.Ct. 952, 112 L.Ed.2d 1041 (1991), *and cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). The jury's award will be considered inviolate so long as it is not "so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Specht v. Jensen,* 832 F.2d

1516, 1528 (10th Cir.1987), *reh'g en banc granted in part on other grounds,* 837 F.2d 940, *and remanded on reh'g on other grounds,* 853 F.2d 805 (1988) (en banc), *and cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989).

 Nothing about the award of damages here suggests that the jury acted improperly in making the award. Palmer told the city council that he had 15 honorable years in law enforcement, II App. at 389, and that transcript was in evidence at the federal trial. The jury deliberated for two days and returned a verdict for an amount less than that requested by Palmer and calculated by his expert. *See* Pl.Ex. 29, Supp.App. at 62–67. Palmer testified that he was forced to work in various jobs with much lower compensation. Supp.App. at 187–192. Moreover, the distribution of damages is explainable; the jury could properly have found that Adair's actions were much less a cause of injury to Palmer's liberty interest than the later actions taken by the city council and the mayor. II App. at 419–420. Viewed in that way, the apportionment of $1 of damages against Adair and $253,188 against the city is understandable.

We are not persuaded that any error was shown in the trial judge's denial of a new trial or remittitur respecting damages.

## VI

 Palmer has requested an award of his costs and attorneys' fees incurred in responding to this appeal under 42 U.S.C. § 1988 (1988).

Plaintiffs who prevail at trial in § 1983 suits and successfully defend those judgments on appeal are entitled to recover attorneys' fees incurred in their appeals. *See Asbury v. Brougham,* 866 F.2d 1276, 1283 (10th Cir.1989). We thus remand the case to the district court for an assessment of the proper amount of attorneys' fees for this appeal and interest, which may be awarded. *See Romberg v. Nichols,* 970 F.2d 512, 524–25 (9th Cir.1992), *cert. granted, judgment*

---

**12.** The discharge decision was announced on January 25, 1989. The ALJ hearing was held on

October 31 and November 1, 1990.

*vacated and case remanded on other grounds,* —— U.S. ——, 113 S.Ct. 1038, 122 L.Ed.2d 348 (1993). With respect to costs on appeal, Palmer may file with the Clerk of this court a bill of costs in accordance with the rules. An award will be considered based on that bill and any objections by the defendants thereto. *See Asbury, supra.*

Accordingly, the judgment is **AFFIRMED** and the case is **REMANDED** to the district court for an award of attorneys' fees on appeal and for the completion of the award of fees and costs below, including those for post-trial proceedings that may not have been allowed earlier.