**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAMELA SMITH, an individual,

    Plaintiff - Appellant,

    v.

DON COCHRAN, an individual,

    Defendant - Appellee.

No. 04-5114
(D.C. No. 00-CV-035-C(J))
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Pamela Smith, an Oklahoma state prisoner, filed suit against Don Cochran, an employee of the Oklahoma Department of Public Safety ("ODPS"), alleging that Cochran repeatedly raped her while she was employed at an ODPS facility as

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

part of a work-release program. On submission of the case, a verdict was returned by the jury in favor of Cochran. Smith appeals, claiming that numerous evidentiary and procedural rulings of the district court were erroneous and affected the outcome of her trial. Because we conclude that none of the challenged rulings rise to the level of legal error or affected the outcome of the trial, we exercise jurisdiction under 28 U.S.C. § 1291 and **AFFIRM**.

**I**

In September 1997, Smith was relocated to a lower security correctional facility, the Tulsa Community Correctional Center (the "Tulsa Correctional Center"), a facility that has since been closed by the Oklahoma Department of Corrections ("ODOC"). Inmates of the Tulsa Correctional Center were required to participate in a work-release program. Under this program, they performed jobs within the Tulsa community during the day and returned to the Tulsa Correctional Center each night. At all other times they were confined within the Tulsa Correctional Center.

From approximately November 1997 until May 1998, Smith was assigned to work as a janitor at two driver's license examination centers operated by ODPS: one located in northern Tulsa, Oklahoma (known as the "North Tulsa" facility) and one located in Jenks, Oklahoma (known as the "Jenks" facility). Many of Smith's family and friends lived near the North Tulsa facility, and she preferred to work primarily at that location. It was while working at the North

Tulsa facility that Smith met defendant Don Cochran, a driver's license examiner employed by ODPS.

Smith and Cochran have divergent recollections of events following their meeting and introduction. Smith's recollection is as follows: Cochran approached her on her first day of work at the North Tulsa facility and commented on the size of her breasts. Later that week, Cochran took advantage of a work-release program rule violation he observed Smith committing by essentially black-mailing her into revealing her "body parts." Following this incident, a pattern developed whereby Cochran turned a blind eye to her rule violations – which were numerous, including family visits, personal telephone use, and leaving the North Tulsa facility to go to a local store – in return for an increasing level of sexual activity with Smith, first oral sex and then sexual intercourse. During their final sexual encounter, Cochran used a salt-shaker to penetrate her. Smith then discontinued sexual relations with Cochran. Her sole attempt to inform others of Cochran's sexual demands was laughingly dismissed by other ODPS employees, although both she and other ODPS employees observed Cochran engage in sexual relations with other women in the very storage room where her sexual encounters with Cochran occurred. Cochran denies all of Smith's claims.

In August 1998, the Tulsa Correctional Center was shut down and Smith was transferred to the Eddie Warrior Correctional Facility (the "EW Correctional

Facility"), where she immediately disclosed Cochran's sexually abusive behavior to ODOC personnel. ODOC promptly provided Smith with medical and psychological treatment, and also initiated a formal investigation into Cochran's activities at the North Tulsa facility. Cochran was notified that as part of the investigation he must submit to a polygraph examination. As the date of the polygraph exam approached, Cochran resigned from ODPS because of a "serious medical condition," expressly denying that his actions were related to Smith's claims or the investigation.[2] He never completed a polygraph exam, and no further action was required of him after his resignation was accepted. In December 1998, ODOC closed the investigation into Smith's allegations.

Smith filed suit against Cochran in federal district court under 42 U.S.C. § 1983, claiming violations of her Fourth, Fifth, Eighth, and Fourteenth Amendment rights. She also asserted state tort law claims for sexual assault and battery and intentional infliction of emotional distress. Cochran moved for summary judgment on the grounds that he was entitled to qualified immunity. The district court denied this motion, and we affirmed. Smith v. Cochran, 339 F.3d 1205 (10th Cir. 2003).

At trial, the only issue before the jury was whether Cochran and Smith had

---

[2] At trial, Cochran admitted that he refused to take a polygraph examination on the advice of his counsel.

engaged in sexual relations.[3] Smith testified that Cochran repeatedly raped her. Cochran's defense was that Smith was a con artist trying to shake him down for money, and he identified numerous inconsistences between Smith's direct testimony, her responses during cross examination, and her deposition answers. After a six day trial, the jury deliberated for approximately one hour before reaching a verdict in favor of Cochran. Smith then filed a motion for a new trial under Federal Rule of Civil Procedure 59(a), or in the alternative, a motion for judgment notwithstanding the verdict, which was denied. Smith appeals, challenging eight district court evidentiary and procedural rulings in Cochran's favor, and the denial of her motion for a new trial.

**II**

Smith appeals the district court's evidentiary rulings admitting into evidence (1) her prior statement that "you can take some checks from the bottom of [elderly peoples'] checkbook[s] and they won't know it's missing for a while," (2) Cochran's testimony that he was a good Christian and references by other witnesses to Cochran's Christianity, (3) transcripts and reports prepared as part of ODPS's internal investigation used to impeach Smith's witnesses that Cochran

---

[3] In a prior opinion, we held that because Smith was a state prisoner in the custody of ODPS employees while she was working at the ODPS facilities any sexual activity between her and any ODPS employee is deemed non-consensual as a matter of law. See Smith, 339 F.3d at 1214. Thus, Cochran was liable if he had engaged in any sexual activity with Smith, regardless of whether she actually consented to performing sexual acts with him.

did not provide to her prior to trial, and (4) statements by other witnesses as to her sexual promiscuity while working at ODPS' North Tulsa facility. Smith also objects to the district court's (5) failure to disturb an implied racial statement made by Cochran's counsel during closing argument, and (6) ruling prohibiting Smith from arguing during closing argument that Cochran was not credible because he quit his job to avoid taking a polygraph examination.

We review a district court's evidentiary decisions for abuse of discretion, and "will not disturb the determination absent a distinct showing the decision was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995). Even if a litigant proves that the district court abused its discretion in admitting or prohibiting certain evidence, the litigant must also prove that such error affected the litigant's substantial rights. Fed. R. Civ. P. 61. An error affects a party's substantial rights if it altered the outcome of the proceedings or produced a contrary result. Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 802-803 (10th Cir. 2005).

**A**

Smith claims that the district court erred by improperly admitting as character evidence under Federal Rule of Evidence 404(b) Smith's statement to an ODPS employee that "you can take some checks from the bottom of their [elderly people's] checkbook and they won't know it's missing for a while." Federal Rule

of Evidence 404(a) states that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving an action in conformity therewith on a particular occasion . . . ." An exception to this general rule is found in Rule 404(b), which provides that evidence of a litigant's prior "crimes, wrongs or acts" may be admissible to show that litigant's "motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Because Smith raises this Rule 404(b) argument for the first time on appeal we review admission of this evidence for plain error.[4] Fed. R. Evid. 103(a)(1) (providing that "nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court); Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 n.2 (10th Cir. 2000). "To constitute plain error, the district court's mistake must have been both obvious and substantial." Cartier v. Jackson, 59 F.3d 1046, 1050 (10th Cir. 1995). In civil cases, the plain error exception is limited to errors that "seriously affect the fairness, integrity, or public reputation of judicial

---

[4] Below, Smith challenged this evidence on the grounds that its admission was precluded by the district court's in limine order excluding evidence of "Plaintiff's past arrest record for those crimes that are beyond the 10 year limitation of Federal Rule of Evidence 609(b)." Federal Rule of Evidence 609(b) prohibits admission of evidence concerning a witness's prior conviction for a crime "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed, whichever is later." This argument was rejected by the district court, and Smith does not raise it on appeal.

proceedings." McEwan v. City of Norman, Okla., 926 F.2d 1539, 1545 (10th Cir. 1991).  Cochran's theory of the case was that Smith was a con artist attempting to steal money from the defendants.  Admission of this evidence for that limited purpose – to show Smith believed she had the present ability to con people – was clearly a proper application of Rule 404(b).


**B**

We next consider whether the district court committed error by allowing Cochran to introduce evidence that he was a "good Christian" in claimed violation of Federal Rule of Evidence 610 and improperly prohibiting Smith from introducing rebuttal evidence disputing Cochran's alleged Christianity and good character.

Federal Rule of Evidence 610 provides that "[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced."  Two pieces of evidence, Smith contends, should clearly have been inadmissible under this rule:  Cochran's testimony that he visited Smith's sister in the hospital because he "got closer to God" following the death of his wife's stepfather, and testimony by other witnesses that they became acquainted with Cochran at various religious events.  Because Smith did not object to introduction of this evidence below, we review admission of this evidence for plain error.  See

-8-

McEwan, 926 F.2d at 1545.

Smith insists that introduction of this evidence was prejudicial, but no explanation has been offered by Smith as to how this evidence either enhanced Cochran's credibility or affected the fairness, integrity, or public reputation of the proceedings. Because of that failure, admission of the evidence was not plain error.

Had she been permitted to rebut evidence of Cochran's Christianity and good character by questioning him about his prior marriages and introducing evidence that his wife was currently married when they met, Smith explains, the claimed prejudice would have been neutralized. Authority for conducting these inquiries exists, Smith submits, under Federal Rule of Evidence 608(b), which provides that "[s]pecific instances of conduct of a witness for the purposes of attacking or supporting the witness' character for truthfulness, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . ." When Smith attempted to cross-examine Cochran on these topics, the district court found that neither Cochran's prior marriages nor the marital status of his wife when he and his wife met was relevant to whether he was a good person or his veracity. Additionally, evidence that he had been married before had no relevance to his current status as a Christian, the court determined,

because Cochran converted to Christianity after marrying his current wife. Given the tenuous connection between a person's prior marriages and their tendency to be truthful on the witness stand, the district court's decision to exclude this evidence is not an abuse of its discretion.

C

Our review now turns to Smith's claim that she was unfairly prejudiced when the district court admitted various transcripts of interviews and reports prepared as part of ODPS's internal investigation for the purpose of impeaching Smith's witnesses.

First, Smith contends that Cochran's failure to produce these documents during discovery, as she requested, prohibits Cochran from utilizing them during the trial for impeachment purposes. No evidence has been presented by Smith that she actually requested the evidence at issue. Accordingly, we address whether Cochran was required to produce these documents under the Federal Rules of Civil Procedure 26(a)(1)(B) in order to use them for impeachment purposes during trial. Rule 26(a)(1)(B) requires that a litigant produce "a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." In this case, the district court correctly found that Cochran used the transcripts solely for impeachment purposes, and thus was not required

to produce these documents under the plain language of Rule 26(a)(1)(B).

In this same context, Smith posits that she is entitled to relief from the jury verdict in Cochran's favor under Federal Rule of Civil Procedure 60(b)(3) because Cochran knowingly concealed the ODPS documents during the proceedings. Rule 60(b)(3) provides that a district court may relieve a party from a final judgment based on the "fraud . . . misrepresentation, or other misconduct of an adverse party." "A party moving for relief pursuant to Rule 60(b)(3) must establish the alleged misconduct by clear and convincing evidence . . . . This can only [be accomplished] by showing that the [opposing party] acted with an intent to deceive or defraud the court, by means of a deliberately planned and carefully executed scheme." Yapp v. Excell Corp., 186 F.3d 1222, 1231 (10th Cir. 1999) (internal quotations and citations omitted). Because the only evidence that Cochran concealed these transcripts are Smith's conclusory allegations to that effect, Smith has failed to prove by clear and convincing evidence that Cochran intended to deceive or defraud the court by knowingly concealing these documents.

**D**

Yet another prejudicial error occurred, Smith asserts, when the district court permitted Cochran to present evidence regarding her demeanor while working at DPS. Effectively conceding that she failed to timely object to admission of this evidence at trial – Smith notes in her brief that she first raised

this objection in her motion for a new trial – we review for plain error.  Dodoo v. Seagate Technology, Inc., 235 F.3d 522, 529 (10th Cir. 2000) (internal citation omitted).  In this case, Smith brought a state law claim for intentional infliction of emotional distress, sought damages in her § 1983 claim for "severe emotional distress," and testified that she was generally shy around men.  Cochran introduced evidence that after the alleged rapes occurred Smith rubbed her breasts against a co-worker and danced while singing a song.  This evidence, the district court concluded,  was relevant to whether Smith suffered severe emotional distress and rebutted Smith's trial testimony regarding her attitude toward men.  We take the district court's position and conclude that it was not plain error to admit this evidence.

**E**

The series of errors continued, Smith claims, when the trial court failed to disturb an implicit racial statement made by Cochran's Caucasian counsel during closing to the all-white jury about Smith, who is African American.

To the extent that Smith is contesting that existence of an all-white jury violated her rights, Smith has failed to allege a cognizable claim under the Fourteenth Amendment.  Brown v. Crouse, 425 F.2d 305, 309 (10th Cir. 1970) (holding that the district court did not err in allowing an African-American plaintiff's claim to be tried to an all-white jury, even where African-American jurors had been removed pursuant to peremptory challenges).  And Smith has not

-12-

asserted a claim under Batson v. Kentucky, 476 U.S. 79 (1986), that her rights were violated because counsel for Cochran challenged African-American jurors based on their race. Thus, we conclude that her general objection to a jury comprised entirely of Caucasians is meritless.

This brings us to Smith's claim that Cochran's counsel made an implicit racial statement during closing that invited the jury to enter "a racist verdict." At trial, Cochran's counsel stated: "Look at him. Look at her. Then decide who is lying." Because Smith did not object to this statement during trial, we review for plain error. See Dodoo, 235 F.3d at 529. We do "not lightly infer that [counsel] intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretation." Donnelly v. Dechristoforo, 416 U.S. 637, 646-47 (1974). In its order denying Smith's motion for a new trial, the district court concluded that "any reasonable person sitting through the trial would have taken the statement as one referencing the parties divergent positions in society and the resulting credibility gap between them and not the meaning advanced by Plaintiff . . . ." Smith's own counsel at trial interpreted the statement in a similar manner. Taking into consideration the Court's admonition, we hold that the district court did not commit plain error in concluding the statement was not racially motivated. Cartier, 59 F.3d at 1050.

**F**

Finally, Smith maintains that the district court abused its discretion by prohibiting her from arguing, at closing, that Cochran lacked credibility because he resigned to avoid taking a polygraph examination.

In Palmer v. City of Monticello, 31 F.3d 1499, 1506 (10th Cir. 1994), we held that "[i]f it is relevant that the polygraph examination was performed, as a fact in and of itself, regardless of what the results were, then that fact may be admissible as an operative fact." However, recognizing the substantial discretion generally afforded trial courts to make evidentiary rulings, we concluded that "[a] trial court will rarely abuse its discretion by refusing to admit [polygraph] evidence, even for [such] a limited purpose and under limited conditions" if it determines the evidence is unduly prejudicial or "the manner of the introduction of the evidence would allow or encourage the jury to draw improper inference[]" that the person is lying because they refused to submit to a polygraph examination. Id. (internal citation omitted).

Assuredly, permission was initially given to Smith's counsel to cross-examine Cochran concerning his refusal to take a polygraph examination. Nevertheless, exercising its discretion, the trial court found that undue prejudice would result from allowing Smith to argue during closing argument that Cochran resigned to avoid taking the polygraph examination, and that the jury would be encouraged to draw the improper inference that, because he did not take the polygraph examination, Cochran raped Smith.

No case law has been cited by Smith, or located by this court, holding that a district court's refusal to permit such a line of argument amounts to error. Nor does she dispute the district court's finding that admitting the evidence of Cochran's refusal to take the polygraph examination would lead the jury to draw an improper inference.[5] As such, the district court did not abuse its discretion.[6]

## III

In addition to challenging the district court's evidentiary decisions, Smith raises two alleged procedural errors, namely the trial court's failure to enter a pretrial order and the trial court's failure to order the jury to continue deliberating before rendering a verdict in favor of Cochran. These challenges are reviewed for an abuse of discretion. See Thweatt v. Ontko, 814 F.2d 1466, 1470 (10th Cir. 1987).

In support of the first contention, Smith argues Federal Rule of Civil

---

[5] We are not persuaded by Smith's citations to United States v. Smith, 629 F.2d 650, 653 (10th Cir. 1980), and United States v. Foppe, 993 F.2d 1444, 1451 (10th Cir. 1993). These cases address whether a district court's failure to comply with Federal Rule of Criminal Procedure 30, which requires the trial court to notify the parties of its intended rulings on requested jury instructions prior to the parties' closing arguments, is reversible error. No such error is alleged in this case.

[6] The district court apparently misread our decision Palmer for the proposition that a party is never able to present evidence that an opposing party has refused to submit to a polygraph examination. Palmer imposes no such categorical prohibition. Nevertheless, because the district court did not abuse its discretion by finding that the evidence was both unduly prejudicial and would lead the jury to draw an improper inference, the evidence was properly excluded under Palmer. Hence, Smith was not prejudiced by the district court's error.

Procedure 16 requires a district court to sign and enter a pretrial order, and its failure to do so here was prejudicial. Rule 16(e) provides that "[a]fter any [pretrial conference] an order shall be entered reciting the action taken." Neither party has identified, and we have not found, any case directly addressing whether a district court commits error by failing to formally enter a pretrial order. In Jones v. Union Indem. Ass'n of Bloomington, 287 F.2d 27, 29 (10th Cir. 1961), we noted that the district court had failed to enter a pretrial order, but, because that issue was not before us, we did not consider whether this failure was error.

We again need not resolve whether failure to formally enter an order is error because Smith has failed to prove she suffered any prejudice. See Fed. R. Evid. 61. Two pretrial orders were submitted by the parties for the trial court's review – an initial and revised version – and both parties were questioned by the trial judge to ensure that they did not object to the content of the orders. Smith proclaims that formal entry of a pretrial order would have "obviated some of the harpoons that were thrown into the trial." Smith has not cited, however, any instance whereby Cochran attempted to introduce evidence not identified in the parties' final revised pretrial order. To the contrary, the record reveals that it was Smith who sought to admit previously undisclosed evidence in violation of the pretrial order. Given the situation presented, any error resulting from the failure to enter a formal pretrial order was not prejudicial to Smith.

As for Smith's second argument, she claims that she was unfairly

prejudiced by the length of the jury deliberations of approximately one hour because the jury could not have carefully considered the evidence and applied the law in that time period. No case is identified by Smith that dictates a jury must deliberate for a specific amount of time prior to reaching a verdict, and we have never imposed such an obligation. See Phillips v. Calhoun, 956 F.2d 949, 953-54 (10th Cir. 1992) (holding that a party must support its argument with legal authority). The district court found that "a conscientious jury would not require an extended time" to decide this case, and it would have been improper to order the jury to further deliberate. Clearly, this ruling is not an abuse of discretion.

**IV**

Finally, Smith tells us that the district court erred by denying her motion for a new trial. We review a district court's denial of a motion for a new trial for an abuse of discretion. Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1241 (10th Cir. 2000). Rule 59(a) of the Federal Rules of Civil Procedure provides a "new trial may be granted to all or any of the parites on all or part of the issues . . . in an action in which there has been a trial by jury . . . ." Such a motion is "generally not regarded with favor, and is granted only with great caution." United States v. Perea, 458 F.2d 535, 536 (10th Cir. 1972). The party seeking to set aside a jury verdict must show either trial error which constitutes prejudicial error or that the verdict was not based on substantial evidence. White v. Conoco, Inc., 710 F.2d 1442, 1443 (10th Cir. 1983). Smith has failed to demonstrate

-17-

either.

To the extent that Smith is asserting the verdict is against the weight of the evidence, we disagree. Whether a verdict is against the weight of the evidence is ordinarily a question of fact, not of law. Tafoya v. Sears, Roebuck & Co., 884 F.2d 1330, 1342 (10th Cir. 1989). "In reviewing a district court's denial of a motion for judgment n.o.v., we may find error only when the evidence points but one way and is susceptible to no reasonable inferences sustaining the position of the party against whom the motion is made." McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir. 1988). For failure of explanation as to why the jury's verdict was against the weight of the evidence, we rule that the district court did not abuse its discretion in rejecting Smith's challenge on this issue.[7]

Smith also argues that she is entitled to a new trial based upon the cumulative effect of the errors we addressed above. A party moving for a new trial based upon an error of law must show not only that error occurred, but that the error affected the substantial rights of the parties. Fed. R. Civ. P. 61. Based on our holdings above, none of the alleged errors affected Smith's substantial

---

[7] Because we hold that Smith has failed to prove that the jury verdict is against the weight of the evidence, we accordingly reject Smith's challenge the district court's denial of her motion for judgment notwithstanding the verdict, which requires her to satisfy the higher standard of showing that "the evidence viewed in the light most favorable to the nonmoving party points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Sanjaun v. IBP, Inc., 275 F.3d 1290, 1293 (10th Cir. 2002).

rights.  The only potential error we have identified is the district court's failure to enter a pretrial order, and we conclude that error was not prejudicial.  Cumulative error analysis thus does not apply.  Castro v. Ward, 138 F.3d 810, 832 (10th Cir. 1998).  Zero plus zero equals zero.

## VI

Because we conclude that none of the alleged errors are meritorious, we **AFFIRM**.

Entered for the Court


Carlos F. Lucero
Circuit Judge