FILED
United States Court of Appeals
Tenth Circuit

**December 6, 2013**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT
_____

SHAWN ROGERS,

      Plaintiff - Appellant,

v.

JENNY ALEZOPULOS, in her official
capacity as President of the Oklahoma
Board of Health; R MURALI KRISHNA,
in his official capacity as Vice President
of the Oklahoma Board of Health; CHRIS
HART-WOLFE, in her official capacity
as Secretary-Treasurer of the Oklahoma
Board of Health; ALFRED BALDWIN,
JR., in his official capacity as a member
of the Oklahoma Board of Health;
MARTHA A. BURGER, in her official
capacity as a member of the Oklahoma
Board of Health; TERRY R. GERARD,
III, in his official capacity as a member of
the Oklahoma Board of Health;
RICHARD G. DAVIS, in his official
capacity as a member of the Oklahoma
Board of Health; BARRY L. SMITH, in
his official capacity as a member of the
Oklahoma Board of Health; RONALD
WOODSON, in his official capacity as a
member of the Oklahoma Board of
Health; TERRY CLINE, in his official
capacity as Commissioner of Health of the
State of Oklahoma; DAN DUROCHER,
in his official capacity as Director of the
Office of Accountability Systems,

No. 12-6264
(D.C. No. 5:11-CV-01140-C)
(W.D. Okla.)

Defendants - Appellees.

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, and **MATHESON**, Circuit Judges.

---

Shawn Rogers appeals the district court's dismissal of his complaint alleging that the defendants denied him due process by failing to hold a name-clearing hearing in connection with his termination from state employment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

We draw the following allegations from Rogers' amended complaint. Rogers began working for the Oklahoma State Department of Health (the "Department") in 1996, and served as the Director of the Department's Emergency Medical Services ("EMS") Division beginning in 2001. In that position, he was responsible for enforcing "ambulance rules" state-wide.

In 2007, the Department suspended the EMS license of ambulance service Central Med following an investigation by Rogers and other Department employees. During an administrative appeal of this suspension, Central Med and the Department entered into a

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

memorandum of understanding. Pursuant to that agreement, Central Med would be sold to a new company, and its principals, Mr. and Mrs. Weaver, would be prohibited from serving in a management capacity at the new company. After Central Med was purchased by Pulse EMS of Oklahoma ("Pulse"), Rogers and others at the Department came to suspect that the Weavers were operating Pulse in contravention of the memorandum of understanding. Following consultations with his supervisors and the Department's Office of General Counsel, Rogers initiated an investigation into this possible breach.

After the investigation began, the Weavers filed complaints with the State Ethics Commission and the Department's Office of Accountability Systems ("OAS"). The Weavers alleged that Rogers, investigator Elizabeth Sullivan, and other department employees were harassing Pulse and continuing their investigation despite a conflict of interest. The State Ethics Commission dismissed the complaint. OAS Director Dan Durocher held several interviews and at least one hearing as part of his investigation of the Weavers' accusations. The hearing was attended by Durocher and additional Department employees, as well as the Weavers' State Representative, the Chief of Staff to the Oklahoma House Speaker, and others. However, neither Rogers nor any of the other employees mentioned in the Weavers' complaint were aware of the meeting.

Sometime after this hearing, the Department agreed to end the administrative proceeding against Pulse, pay Pulse or the Weavers "an amount believed to be $25,000," and remove all statements of deficiency regarding Pulse and Central Med from the

Department's records. In addition, the Department "agreed to correspond with numerous Oklahoma municipalities within Pulse's service area advising them that [Rogers'] statements or regulatory allegations against both Central Med and Pulse were untruthful." Subsequently, Rogers, Sullivan, and a Department attorney assigned to the Pulse investigation were terminated. Following these terminations, the Department "directed contact with certain Oklahoma municipalities advising them that [Rogers'] statements or regulatory allegations against both Central Med and Pulse were untruthful."

After being terminated, Rogers was approached by a private EMS company for consideration as its operating officer. However, he was later dropped from consideration due to "the events at the state." Rogers then sought a position with another employer, which telephoned the Department's personnel division. The prospective employer was informed that Rogers was listed as not eligible for rehire with the Department. Rogers did not obtain a position with that employer.

Rogers then filed suit in federal district court against several Department officials, alleging that his due process rights were violated by the Department's failure to hold a name-clearing hearing in connection with his termination. He seeks damages, reinstatement, and a declaration regarding the insufficiency of the Department's procedures. Rogers also asserted a state-law claim for wrongful termination that is not at issue in this appeal. After permitting him to amend his complaint, the district court concluded that Rogers failed to state a claim and dismissed the action. Rogers timely appealed.

## II

We review a district court's grant of a Fed. R. Civ. P. 12(b)(6) motion to dismiss de novo. Hollonbeck v. U.S. Olympic Comm., 513 F.3d 1191, 1194 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

This court has recognized that a government employee possesses a liberty interest in protecting his good name and reputation in certain circumstances. See Darr v. Town of Telluride, 495 F.3d 1243, 1255 (10th Cir. 2007). If a public employer terminates "an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities, a claim for relief is created." Melton v. City of Okla. City, 928 F.2d 920, 927 (10th Cir. 1991).

To determine whether a plaintiff's liberty interest in his good name is infringed, we apply a four-part test:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating

the employee or must foreclose other employment opportunities. And fourth, the statements must be published. These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest.

Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994) (citations omitted). We later clarified in Renaud v. Wyoming Department of Family Services, 203 F.3d 723 (10th Cir. 2000), that the third factor requires "that the defamation occur in the course of the termination of employment." Id. at 728 n.1. If these conditions are met, the government must afford the plaintiff "an adequate name-clearing hearing." Workman, 32 F.3d at 480.

We agree with the district court that most of the allegedly defamatory statements upon which Rogers relies are non-actionable because they were not made by his employer. See Sandoval v. City of Boulder, 388 F.3d 1312, 1329 (10th Cir. 2004) (rejecting due process claim based on denial of name-clearing hearing because the "alleged derogatory statements were not made by the City [Sandoval's employer]"). On appeal, Rogers focuses on statements made by the Weavers, complaining that the Department "allowed" these individuals to impugn his good name during the course of the OAS investigation. Although the Weavers' comments may give rise to a claim against them under state law, Sandoval makes clear that such statements do not render the Department liable.

We have recognized an exception to the general rule that stigmatizing statements must be made by the employer itself. A government employer may be required to hold a name-clearing hearing if it adopts or ratifies statements made by a third party. See

-6-

Palmer v. City of Monticello, 31 F.3d 1499, 1503 n.2 (10th Cir. 1994). In Palmer, a highway patrol officer claimed that Palmer had falsified a speeding ticket. Id. at 1501. The police chief eventually fired Palmer, stating in the letter of termination that the ticket was sufficient to justify his termination. Id. At a subsequent city council meeting, the chief repeated the allegation that Palmer had falsified the ticket, and the council voted the next day to uphold the termination. Id. at 1501-02. We held that the accusation of falsifying a ticket was stigmatizing and that the "city council adopted the accusation against Palmer." Id. at 1503 n.2.

Unlike Palmer, however, Rogers does not provide any factual allegations suggesting that the Department publicly repeated the Weavers' accusations or that the Department publicly identified those accusations as the reason for his termination. Rogers points to Winegar v. Des Moines Independent Community School District, 20 F.3d 895 (8th Cir. 1994), in which that court held that a school's decision to interview students about alleged teacher misconduct constituted publication of defamatory statements. Id. at 899 n.3. Our holding that a claim fails if the "derogatory statements were not made by the [employer]," Sandoval, 388 F.3d at 1329, even when harmonized with the adoption theory espoused in Palmer, see 31 F.3d at 1503 n.2, constrains us from importing our sibling circuit's publication-by-interview jurisprudence.

The only defamatory statements the complaint specifically attributes to the Department are a set of letters alleged to have been sent to various Oklahoma municipalities stating that Rogers' "statements or regulatory allegations against both

-7-

Central Med and Pulse were untruthful." This allegation lacks specificity as to the content of the letters, but even setting aside this vagueness, Rogers fails to allege that the letters were sent "in the course of the termination of employment." Renaud, 203 F.3d at 728 n.1. The amended complaint merely states that one of the defendants "directed contact with" the municipalities sometime "[s]ubsequent to [Rogers'] termination."

Because Rogers' amended complaint does not allege specific facts showing that the Department made false, stigmatizing statements in the course of his termination, or that the Department adopted such statements made by third parties, we conclude that the district court did not err in dismissing his due process claim.[1]

## III

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[1] Rogers also asserted a separate claim seeking a declaratory judgment regarding the inadequacy of OAS procedures, but concedes that this claim fails if we conclude he failed to state a liberty interest deprivation.